# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# MIDLAND DIVISION

| | |
|---|---|
| In re: | Chapter 15 |
| KODIAK SERVICES USA, INC., | Case No. ____-_____ (___) |
| Debtor in Foreign Proceeding. | Recognition Request Pending |
| In re: | Chapter 15 |
| KODIAK SERVICES PARTNERSHIP, | Case No. ____-_____ (___) |
| Debtor in Foreign Proceeding. | Recognition Request Pending |
| In re: | Chapter 15 |
| KODIAK WIRELINE SERVICES LTD., | Case No. ____-_____ (___) |
| Debtor in Foreign Proceeding. | Recognition Request Pending |
| In re: | Chapter 15 |
| KODIAK ENERGY SOLUTIONS LTD., | Case No. ____-_____ (___) |
| Debtor in Foreign Proceeding. | Recognition Request Pending |
| In re: | Chapter 15 |
| KODIAK TOOLS LTD., | Case No. ____-_____ (___) |
| Debtor in Foreign Proceeding. | Recognition Request Pending |
| In re: | Chapter 15 |
| 1623360 ALBERTA LTD., | Case No. ____-_____ (___) |
| Debtor in Foreign Proceeding.[1] | Recognition Request Pending |

---

[1] The last four digits of the United States Tax Identification Number or Canadian Business Number of the Debtors, as applicable, follow in parentheses: Kodiak Services USA, Inc. (0169) ("Kodiak USA"), Kodiak Services Partnership (9809) ("Kodiak Partnership"), Kodiak Wireline Services Ltd. (2948) ("Kodiak Wireline"), Kodiak Energy Solutions Ltd. (2892) ("Kodiak Solutions"), Kodiak Tools Ltd. (3099) ("Kodiak Tools"), and 1623360 Alberta Ltd. (1045) ("162 Alberta", collectively with Kodiak Partnership, Kodiak Wireline, Kodiak Solutions, and Kodiak Tools, the "Canadian Debtors"). The Debtors' headquarters is located at #2230, 13 Mission Avenue, St. Alberta, Alberta. Kodiak's principal place of business in the US is located at its leased premises in Midland, Texas.

**DECLARATION OF DAN MCCULLOCH IN SUPPORT OF
VERIFIED PETITIONS FOR RECOGNITION UNDER CHAPTER 15
AND FOR ADDITIONAL RELIEF UNDER 11 USC § 1521**

I, Dan McCulloch, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct:

1.      I am a natural person over the age of 18, a citizen of Canada, and, if called upon, could testify to all matters set forth in this declaration.

2.      I am a Vice President at the firm Ernst & Young Inc. (the "Receiver"), the putative foreign representative and duly authorized and appointed Receiver over the assets and undertakings of the above-captioned affiliates (collectively, the "Debtors" or "Kodiak") in a proceeding (the "Receivership Proceeding") under Section 243(1) of the Bankruptcy and Insolvency Act, R.S.C. 1985, c. B-3, as amended (the "BIA") and Section 13(2) of the *Judicature Act*, RSA 2000 c J-2, as amended (the "Judicature Act") before the Court of Queen's Bench of Alberta (the "Canadian Court").

3.      I submit this declaration in support of the verified petitions for recognition under chapter 15 and for additional relief under 11 U.S.C. § 1521 (the "Petitions") filed concurrently herewith.

4.      Matters stated in this declaration that are statements of fact and that are based upon my personal knowledge are true and correct. Matters stated in this declaration that are statements of fact and that are not based upon my personal knowledge but that are derived from documents or information supplied to me are true to the best of my information and belief.

*The Declarant*

5.      I am a licensed Canadian trustee in bankruptcy, a Chartered Insolvency and Restructuring Professional and a Chartered Accountant and specialize in corporate workouts, bankruptcy, and other insolvency matters. I am a Partner & Senior Vice President in the

accountancy firm Ernst & Young Inc. and, since January 2, 2015, have been a part of the insolvency practice of Ernst & Young Inc. I have been practicing in the area of corporate workouts, bankruptcy and insolvency for twenty years, acting as a receiver, monitor, and/or bankruptcy trustee for domestic and foreign clients, as well as advising in respect of out-of-court liquidations.

*Commencement and Purpose of Chapter 15 Cases*

6.      This Declaration is submitted in support of the Petitions, which are being filed herewith, by and through, Dentons US LLP.  The purpose of the above-captioned chapter 15 cases (the "Chapter 15 Cases") is to enable the Receiver to carry out the terms of the Receivership Order and to identify, realize, and administer the Debtors' assets within the territorial jurisdiction of the United States for distribution in the Receivership Proceeding.

## BACKGROUND

*Business and Assets*

7.      Kodiak has historically operated throughout Northern Alberta, Saskatchewan, and British Colombia, Canada, and Midland, Texas though as at the date of the January 10, 2019, it was operating only in Alberta and Texas. Historically, Kodiak's Canadian and US operations are integrated and run by common management. The majority of the Kodiak shareholders, ultimately responsible for Kodiak's overall operations, are located in St. Albert, Alberta, Canada.

8.      An organizational chart showing the ownership structure of Kodiak is attached as Exhibit A.

9.      Kodiak's assets are comprised of the assets necessary to conduct wireline services, which includes, among other things, vehicles, trailers, and industry specific equipment including explosives and nuclear materials in the United States.

10.      Kodiak also holds the following real estate interests:

a. an ownership interest, subject to mortgages, held by Kodiak Partnership in Whitecourt, Alberta;

   b. a leasehold interest held by Kodiak Partnership in Calgary, Alberta;

   c. a leasehold interest held by Kodiak Partnership in Provost, Alberta;

   d. a leasehold interest held by Kodiak Partnership in Slave Lake, Alberta;

   e. a leasehold interest held by Kodiak Partnership in Red Deer, Alberta; and

   f. a leasehold interest held by Kodiak USA in Midland, Texas (the "Midland Lease").

*Debt and Security*

11.     Kodiak has two primary secured lenders, ATB Financial, formerly Alberta Treasury Branches, ("ATB") and Export Development Canada ("EDC").

12.     ATB is a corporation existing pursuant to the provisions of the *ATB Financial Act*, RSA 2000 c A-45.2.

13.     EDC is a self-financing Canadian Crown corporation existing pursuant to the *Export Development Act*, RSC 1985 c E-20, who supports and develops Canada's export trade by helping Canadian companies respond to international business opportunities.

**A.  ATB**

14.     Pursuant to a restated credit agreement dated March 13, 2018, as subsequently amended, ATB provided certain loans to Kodiak Partnership (the "ATB Kodiak Partnership Loans").

15.     I am advised that, as at March 19, 2019, Kodiak Partnership was indebted to ATB pursuant to the ATB Kodiak Partnership Loans for $5,313,372.22 (the "Kodiak Partnership ATB Indebtedness").

16.     The Kodiak Partnership ATB Indebtedness is guaranteed by:

a. Kodiak Wireline, pursuant to an unlimited guarantee dated August 17, 2017;

b. Kodiak Solutions, pursuant to an unlimited guarantee dated December 18, 2017;

c. Kodiak Tools, pursuant to an unlimited guarantee dated December 18, 2017;

d. 162 Alberta, pursuant to an unlimited guarantee dated December 18, 2017; and

e. Kodiak USA, pursuant to an unlimited guarantee dated December 18, 2017; (collectively, the "Kodiak Partnership ATB Guarantees").

17.     Pursuant to a restated credit agreement dated February 26, 2018, as subsequently amended, ATB provided certain loans to Kodiak Wireline (the "ATB Kodiak Wireline Loans", collectively with the ATB Kodiak Partnership Loans, the "ATB Kodiak Loans").

18.     I am advised that, as of March 19, 2019, Kodiak Wireline was indebted to ATB pursuant to the ATB Kodiak Wireline Loans for $4,803,866.13 (the "Kodiak Wireline ATB Indebtedness").

19.     The Kodiak Wireline ATB Indebtedness is guaranteed by:

a. Kodiak Partnership, pursuant to an unlimited guarantee dated December 18, 2017;

b. Kodiak Solutions, pursuant to an unlimited guarantee dated December 18, 2017;

c. Kodiak Tools, pursuant to an unlimited guarantee dated December 18, 2017;

d. 162 Alberta, pursuant to an unlimited guarantee dated December 18, 2017; and

e. Kodiak USA, pursuant to an unlimited guarantee dated December 18, 2017;

(collectively, the "Kodiak Wireline ATB Guarantees", and together with the Kodiak Partnership ATB Guarantees the "Kodiak ATB Guarantees").

20. As security for their respective obligations to ATB, Kodiak executed the following security agreements in favor of ATB:

    a. Security Agreement granted by Kodiak Partnership dated August 17, 2017;

    b. Security Agreement granted by Kodiak Wireline dated August 17, 2017;

    c. Security Agreement granted by Kodiak Solutions dated December 18, 2017;

    d. Security Agreement granted by Kodiak Tools dated December 18, 2017; and

    e. Security Agreement granted to Kodiak USA dated January 25, 2019;

(the foregoing is collectively referred to herein as the "Kodiak ATB Security Agreements").

**B. EDC**

21. Pursuant to Loan Agreements dated April 25, 2017 and November 13, 2017, EDC provided certain loans to Kodiak USA (the "EDC Kodiak USA Loans").

22. I am advised that, as at March 18, 2019, Kodiak USA was indebted to EDC pursuant to the EDC Kodiak USA Loans for $3,635,088.80 (the "Kodiak USA EDC Indebtedness").

23. The portion of the Kodiak USA EDC Indebtedness related to loans made under the April 25, 2017 Loan Agreement is guaranteed by:

    a. Kodiak Wireline, pursuant to an unlimited guarantee dated April 25, 2017; and

    b. Kodiak Partnership, pursuant to an unlimited guarantee dated April 25, 2017;

(collectively, the "April 25 EDC Guarantees")

24.     The portion of the Kodiak USA EDC Indebtedness related to loans made under the November 13, 2017 Loan Agreement is guaranteed by:

a.  Kodiak Wireline, pursuant to an unlimited guarantee dated November 13, 2017; and

b.  Kodiak Partnership, pursuant to an unlimited guarantee dated November 13, 2017; (collectively, the "November 13 EDC Guarantees", and collectively with the April 25 EDC Guarantees, the "Kodiak EDC Guarantees")

25.     As security for their respective obligations to EDC, Kodiak executed the following security agreements in favor of EDC:

a.  Security Agreement granted by Kodiak USA dated April 25, 2017;

b.  General Security Agreement granted by Kodiak Partnership dated April 25, 2017;

c.  General Security Agreement granted by Kodiak Wireline dated April 25, 2017;

d.  Security Agreement granted to Kodiak USA dated November 13, 2017;

e.  General Security Agreement granted by Kodiak Partnership dated November 13, 2017; and

f.  General Security Agreement granted by Kodiak Wireline dated November 13, 2017;

(the foregoing is collectively referred to herein as the "Kodiak EDC Security Agreements").

*Demand and Forbearance*

26.     As of the summer of 2018, Kodiak Partnership and Kodiak Wireline were in default of their respective loan agreements with ATB.

27.     On or about July 26, 2018, ATB, through its legal counsel, made demand of Kodiak in respect of their obligations owing to ATB and issued notices of intention to enforce security in accordance with section 244 of the BIA.

28.     On August 7, 2018, ATB entered into a forbearance agreement with Kodiak, (the "Forbearance Agreement"), for the purpose of allowing time to obtain additional funds through either or a combination of a sale of the assets of Kodiak USA or an equity injection.

29.     Pursuant to the Forbearance Agreement, each member of Kodiak acknowledged and agreed that the ATB Indebtedness was due and payable and that the Kodiak ATB Guarantees and the Kodiak ATB Security Agreements (excluding the Security Agreement provided by Kodiak USA, which was not in existence at the time) were valid and enforceable. Additionally, it was a term of the Forbearance Agreement that, upon an event of default, ATB would have the immediate right, without further notice, to enforce and appoint a receiver over the Kodiak's assets and undertakings.

30.     Kodiak defaulted under the terms of the Forbearance Agreement due to Kodiak ceasing operations and that the Forbearance Agreement expired through the effluxion of time.

*The Commencement of the Receivership Proceedings*

31.     On January 10, 2019, ATB brought an application to appoint a receiver and manager over the assets, properties, and undertakings of Kodiak Partnership, Kodiak Wireline, Kodiak Solutions, Kodiak Tools, and 162 Alberta (the "Initial Receivership Entities"), and a hearing was held in the Canadian Court in respect thereof.

32.     On January 10, 2019, the Canadian Court granted an order (the "Initial Receivership Order") in the Receivership Proceeding appointing Ernst & Young Inc. as interim receiver and receiver and manager of the all of the Initial Receivership Entities' current and

future assets, undertakings, and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof (collectively, the "Initial Property").

33.     The Initial Receivership Entities had each consented to the Initial Receivership Order.

34.     The Initial Receivership Order expressly granted ATB leave to apply to the Canadian Court for an order appointing a receiver and manager over the current and future assets, undertakings, and properties of Kodiak USA.

35.     On March 13, 2019, ATB brought an application to appoint Ernst & Young Inc. as receiver and manager over the assets, properties, and undertakings of Kodiak USA and a hearing was held in the Canadian Court in respect thereof.

36.     On March 13, 2019, the Canadian Court amended the Initial Receivership Order (the Initial Receivership Order, as amended, being the "Receivership Order") in the Receivership Proceeding expanding the Initial Receivership Order to appoint Ernst & Young Inc. as receiver and manager of the all of Kodiak USA's (collectively with the Initial Receivership Entities, the "Receivership Parties") current and future assets, undertakings, and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof (collectively with the Initial Property, the "Property").

37.     A true and correct certified copy of the Receivership Order is attached hereto as Exhibit B.

*The Receivership*

38.     Pursuant to the Receivership Order, the Receiver is empowered and authorized, but not obligated, to act at once in respect of the Property, including:

> a. to take possession of and exercise control over the Property and any and all proceeds, receipts and disbursements arising out of or from the Property;

b. to receive, preserve and protect the Property, or any part or parts thereof;

c. to manage, operate and carry on the business of the Receivership Parties;

d. to receive and collect all monies and accounts now owed or hereafter owing to the Receivership Parties;

e. to market any or all of the Property;

f. to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business:

g. to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

h. to exercise any shareholder, partnership, joint venture or other rights which the Receivership Parties may have; and

i. to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations,

and in each case where the Receiver takes any such actions or steps, it is exclusively authorized and empowered to do so, to the exclusion of all other individuals, firms, corporations, government bodies or agencies, or other entities having notice of the Receivership Order, including the Receivership Parties.

39. Pursuant to the BIA, the Receiver is an independent officer of the Canadian Court and acts on behalf of all creditors of Kodiak. The Receiver is to secure and monetize Kodiak's assets to maximize realization for distribution to creditors entitled to same. Also pursuant to the BIA, the Receiver is obligated to file reports with the Canadian Court and the Superintendent of Bankruptcy, the federal regulator in Canada, on the progress of, and major events that occur during, the Receivership Proceeding.

40.     To that end, the Receiver is in the process of inspecting Kodiak's books and records, taking possession of the Property, identifying potential creditors in Canada and the US, notifying them of the Receivership Proceeding where necessary or appropriate, and determining the complete body of claims against the Property and their priority.

41.     The Receiver is also in the process of undertaking a marketing process in respect of the Property with a view to identifying one or more suitable buyers and completing sale transactions in respect of the Property.  The Receiver has commenced a sales process with respect to certain of the Property located in Canada.  In most cases, pursuant to the Receivership Order, the Receiver will require approval of the Canadian Court for each significant sale transaction and will seek from the Canadian Court a vesting order, delivering title to the assets free and clear of the claims of all creditors.  To the extent required, an order recognizing such sale as to assets located in the United States will be sought from this Court.

*Treatment of Creditor Claims and Distribution of Proceeds within the Receivership Proceeding*

42.     The Receiver has a duty to undertake a review of any and all secured claims, charges or liens in respect of all assets comprising the Property to determine their validity, extent and priority.  Once this is done, the Receiver will seek the approval of the Canadian Court, on notice to the Receivership Parties and other parties in interest, to distribute the proceeds of all sales of the Property to any secured creditors in accordance with the priority of all such claims, including the claims of the Receiver (if any) in respect of its priority charges under the Receivership Order related to costs of administering the Receivership.  Any proceeds in excess of secured claims will be distributed by Canadian Court order.  Thus, no funds or assets will be distributed to ATB, EDC, or others without supervision by and approval of the Canadian Court.

43.     The Receiver is currently aware that ATB, EDC, and certain equipment lessors assert secured claims over the Property, and the Receiver continues to review the Debtors' books

and records and other relevant sources, such as the relevant personal property security registries in the United States and Canada, to ensure all secured creditors are identified.

44.     The Receiver does not expect any funds to remain for distribution to unsecured creditors.  If sale proceeds remain after payments are made to all identified secured creditors, as contemplated above, the Receiver would likely seek to conduct a claims process, either through the Receivership Proceeding or by filing for bankruptcy in respect of the Debtors, for the purpose of distributing proceeds to unsecured creditors of each Debtor on a *pro rata* basis, through the Canadian Court.  I am informed that such ratable distribution is similar to what would occur in the United States.  Additionally, if a creditor wished to object to the Receiver's adjudication of his or her claim, such creditor would have a right to be heard in the Canadian Court.

45.     If such a claims process is not undertaken, unsecured creditors would retain their claims against the Receivership Parties such that the rights of unsecured creditors to assert their claims against the Debtors would be unaffected by the Receivership Order and the Receivership Proceeding.

46.     In my view, the claims process outlined above, as overseen by the Canadian Court, would be efficient in terms of the costs to the Debtors and diminution of proceeds available to creditors, fair to all creditors of the Debtors, whether Canadian or American, and appropriate in the circumstances.  For this reason, the Receiver requests that this Court permit all claims to be administered under Canadian law and to be overseen by the Canadian Court in respect of secured and unsecured claims against all the Debtors, without the requirement of an additional claims process to be run through the Chapter 15 Cases.

*Center of Main Interest and Assets Located in the US*

47.     Historically, and for the majority of its life, Kodiak's Canadian and US operations were integrated and primarily conducted out of Canada. It is only recently, since the summer of

2018, that management of the Canadian and US operations have been separated. The majority of Kodiak's shareholders, ultimately responsible for its operations, are located in Alberta, Canada. The major creditors of both the Canadian Debtors and Kodiak USA are ATB and EDC. These entities are both Canadian and both offered credit based upon, and at a time when, Kodiak's Canadian and US operations were consolidated and managed primarily in Canada.

48.     Certain equipment and other Property covered by the Receivership Order are also located on the lands covered by the Midland Lease. Additionally, it appears that certain property of the Canadian Debtors has been moved to Midland, Texas and is located on the property subject to the Midland Lease and under the control of Kodiak USA. It further appears that some property of a *di minimus* value of Kodiak USA may have been transferred to Alberta.

49.     The Receiver has not yet identified any US Accounts which have cash on deposit that is covered by the Receivership Order, though further investigation is required to determine if such accounts exist.

50.     The Receiver has not yet identified if there are receivables owed to Kodiak recoverable in the United States or the full extent to which property of the Canadian Debtors has been transferred to the US. Further investigation to determine the extent to which each of these exist is required so that the Receiver can secure and realize upon them to fulfill its mandate in the Receivership Proceedings. The Receiver is also in the process of identifying whether there are other assets located in the United States.

51.     The Receiver also seeks relief under chapter 15 to protect the Debtors' asset value from diminution due to expropriation of assets or other reasons, termination of executory contracts and unexpired leases (such as the Midland Lease), and other risks to the value of the Property located in the United States, to enable the Receiver to identify United States creditors,

and to determine how best to maximize the value of the Property located in the United States and the operations of the Debtors for the benefit of all creditors.

*Corporate Ownership*

52.     An organizational chart detailing corporate ownership of Kodiak is attached as Exhibit A.

## MOTIONS

53.     In furtherance of the above-outlined objectives, the Receiver expects to file a number of motions and proposed orders and respectfully requests that the Court consider entering the proposed orders granting such motions.  I have reviewed each of the motions and proposed orders (including any exhibits thereto) and the facts set forth there are true and correct to the best of my knowledge, information and belief.

**A.      Verified Petition and Motion for Recognition of a Foreign Proceeding and Additional Provisional and Final Relief**

54.     The Receiver has filed, concurrently herewith, a motion (the "Recognition Motion") seeking provisional relief, final relief and final recognition of the Receivership Proceeding as a foreign proceeding.  As set forth in the Recognition Motion, this Court should recognize the Receivership Proceeding as a "foreign main proceeding", as defined in section 1502(4) of the Bankruptcy Code.  In the alternative, this Court should recognize the Receivership Proceeding as a "foreign main proceeding" with respect to the Canadian Debtors and a "foreign non-main proceeding", as defined in section 1502(4) of the Bankruptcy Code, with respect to Kodiak USA.

55.     I understand that the Bankruptcy Code provides that a foreign proceeding is a "foreign main proceeding" if it is pending in the country where the debtor has its "center of main interests," and a foreign proceeding is a "foreign non-main proceeding" if it is pending in the country where the debtor has an "establishment," defined as a place of operations where the

debtor "carries out a nontransitory economic activity." *See* 11 U.S.C. §§ 1517(b)(1)-(b)(2), § 1502(2).

56.     As set forth above, Canada is the center of main interests for each of the Receivership Parties.  At the very least, Canada is the center of main interests for Canadian Debtors, and Kodiak USA maintains nontransitory economic activities in Canada.  It is my belief that Canada is the Debtors' center of main interests, and, accordingly, the Receivership Proceeding should be recognized by the Court as a foreign main proceeding.  However, even assuming that Canada is not the center of main interests of Kodiak USA, based on the above description, it is my belief that Kodiak USA clearly has an "establishment" in Canada within the meaning of section 1502(2) of the Bankruptcy Code.

57.     By the Recognition Motion, the Receiver also requests preliminary relief (a) pursuant to section 1519(a)(1), staying execution against the Debtors' assets, (b) pursuant to section 1519(a)(2), entrusting the administration or realization of any and all Property located in the US to the Receiver, in order to protect and preserve the value of assets, and (c) pursuant to section 1519(a)(3), suspending the right of any party save the Receiver to transfer, encumber or otherwise dispose of any of the Property located in the US.  The Receiver also requests the application of sections 362 and 365(e) (but not any other subsection of Section 365, or Section 365 generally) of the Bankruptcy Code.

58.     As explained more fully in the Recognition Motion, such preliminary relief pending the Court's determinations with respect to recognition of the Receivership Proceeding as a "foreign main proceeding" will protect the Debtors' creditors and other stakeholders from irreparable harm from dissipation of assets by management, individual creditor action against the Debtors, and/or termination of executory contracts due to either the filing of the Receivership Proceeding or the Chapter 15 Cases.  Accordingly, I believe that granting the provisional relief

requested in the Recognition Motion is necessary for the successful realization on the Property, and clearly in the Debtors' creditors' best interests.

59.     Further, the final relief sought in the Recognition Motion is warranted, necessary and appropriate.  The failure to protect the Debtors' assets located in the United States will irreparably harm the Receiver's ability to maximize the value of the Property, on an equitable basis, for all creditors of the Debtors. The proposed relief will ease these concerns and allow for the orderly administration of the Debtors' affairs and equitable resolution of the Debtors' liabilities with supervision by the Canadian Court. A stay of all actions and remedies that could be exercised against the Debtors and protection against automatic termination of contracts will preserve the Debtors' assets for the benefit of their creditors and allow the Receiver to devote its full attention to effectively and efficiently liquidating the Debtors' assets and business.

60.     Accordingly, based on the foregoing, I urge the Court to grant the relief requested in the Recognition Motion, as I believe such relief to be vital to a successful monetization of the Property, and in the best interests of the Debtors and their creditors generally.

**B.      Joint Administration of Cases**

61.     The Receiver has filed a motion to jointly administer the Chapter 15 Cases (the "Joint Administration Motion"). I believe that joint administration is warranted in these cases. The Debtors are affiliated entities with closely related financial affairs and business operations, and joint administration will ease the administrative burden on the Court and the parties.  I anticipate that the various notices, applications, motions, other pleadings, hearings and orders in these cases will affect each of the Receivership Parties.  The failure to administer these cases jointly would result in duplicative pleadings and service. Such unnecessary duplication would impose avoidable expenses on all parties.

62.     Joint administration will permit this Court to use a single docket for the jointly administered cases and combine notices to creditors and other parties in interest of the Debtors. Joint administration will also protect parties in interest by ensuring that they will be appropriately apprised of all matters. Accordingly, I believe entry of an order granting the relief requested in the Joint Administration Motion is in the best interests of the Debtors and all parties in interest.

**C.     Motion to Approve Order (I) Shortening Notice and Scheduling an Emergency Hearing on Verified Petition and Motion for Provisional and Final Relief for Recognition of a Foreign Proceeding; (II) Scheduling a Hearing on Chapter 15 Petitions for Recognition and Joint Administration Motion; and (III) Specifying Form and Manner of Service of Notice of Filing of Petitions and Other Pleadings**

63.     The Receiver has filed a motion (the "<u>Notice Motion</u>") to (a) shorten notice and schedule an emergency hearing on the Recognition Motion, (b) schedule a hearing on the Chapter 15 Petitions for recognition, the Recognition Motion and the Joint Administration Motion, and (c) specify the form and manner of service of notice of the Chapter 15 Cases, the Recognition Motion, the Joint Administration Motion, and other related pleadings involving the Chapter 15 Cases.

64.     The Debtors have creditors, potential creditors, and other parties in interest, all of which need to be provided with, among other things, notice of the filing of these Chapter 15 Cases, the Provisional Relief Order relating to the Recognition Motion (once entered), the proposed Recognition Order relating to the Recognition Motion, the deadline to object to the Recognition Motion, and the hearing on the Recognition Motion. Under the facts and circumstances of the Chapter 15 Cases, it is my belief that service of the notice in the manner proposed in the Notice Motion will provide the Debtors' various parties in interest due and sufficient notice and service of such matters and any associated objection deadline and hearing dates.

65. Accordingly, I believe entry of an order granting the relief requested in the Notice Motion is in the best interests of the Debtors and all parties in interest.

**D.     Conclusion**

66. Based on the foregoing, which is correct to the best of my knowledge, information and belief, I believe that the relief requested in the motions is well justified, necessary to a successful Receivership Proceeding, and in the best interests of the Debtors and their creditors and should be granted in full.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: March 27, 2019
      Edmonton, Alberta, Canada

_____
Dan McCulloch

**Exhibit A**

**Organizational Chart**



**Exhibit B**

**Receivership Order**

AMENDED this ___13___ day of
___March 2019.___ Pursuant to
Rule 3.62 _____,
Dated the 13 day of March, ___

I hereby certify this to be a true copy of
the original *Amended Receivership*
*Order*

Dated this 13 day of March 2019

_____
for Clerk of the Court

CLERK OF THE COURT

Clerk's stamp:

MAR 1 3 2019

JUDICIAL CENTRE
OF CALGARY

| | |
|---|---|
| COURT FILE NUMBER | 1901-00238 |
| COURT | COURT OF QUEEN'S BENCH OF ALBERTA |
| JUDICIAL CENTRE | CALGARY |
| PLAINTIFF | ATB FINANCIAL |
| DEFENDANTS | KODIAK SERVICES PARTNERSHIP, KODIAK WIRELINE SERVICES LTD., KODIAK ENERGY SOLUTIONS LTD., KODIAK TOOLS LTD., 1623360 ALBERTA LTD., KODIAK SERVICES USA, INC., KODIAK SERVICES MEXICO, SA. DE CV and KODIAK SERVICES INT'L INC. |
| DOCUMENT | **AMENDED RECEIVERSHIP ORDER** |
| ADDRESS FOR SERVICE AND CONTACT INFORMATION OF PARTY FILING THIS DOCUMENT | Norton Rose Fulbright Canada LLP 400 3rd Avenue SW, Suite 3700 Calgary, Alberta T2P 4H2 CANADA |

Howard A. Gorman, Q.C. and Meghan L. Parker
howard.gorman@nortonrosefulbright.com
meghan.parker@nortonrosefulbright.com

Tel: +1 403.267.8222
Fax: +1 403.264.5973

Lawyers for the Plaintiff, ATB Financial
File no.: 1001037980

DATE ON WHICH ORDER WAS PRONOUNCED: January 10, 2019, as amended March 13, 2019

NAME OF JUDGE WHO MADE THIS ORDER: The Honourable Justice C. Jones (amended order pronounced by the Honourable Justice K. D. Yamauchi)

LOCATION OF HEARING: Calgary, Alberta

**UPON** the application of ATB Financial in respect of Kodiak Services Partnership, Kodiak Wireline Services Ltd., Kodiak Energy Solutions Ltd., Kodiak Tools Ltd., 1623360 Alberta Ltd. and Kodiak Services USA, Inc. (the "Receivership Debtors"); **AND UPON** having read the Application, the Affidavit of Muhammad Ashraf, filed; and the Affidavit of Service, filed; **AND UPON** reading the consent of Ernst & Young Inc. to act as interim receiver and receiver and manager ("Receiver") of the Debtor, filed; **AND UPON** noting the consent of the Defendants; **AND UPON** hearing counsel for the Plaintiff; **IT IS HEREBY ORDERED AND DECLARED THAT:**

**SERVICE**

1.    The time for service of the notice of application for this order is hereby abridged and service thereof is deemed good and sufficient.

**APPOINTMENT**

2.    Pursuant to section 243(1) of the *Bankruptcy and Insolvency Act*, R.S.C. 1985, c. B-3 ("BIA") and sections 13(2) of the *Judicature Act*, R.S.A. 2000, c.J-2, Ernst & Young Inc. is hereby appointed Receiver, without security, of all of the Receivership Debtors' current and future assets, undertakings and properties of every nature and kind whatsoever, and wherever situate, including all proceeds thereof (the "Property").

**RECEIVER'S POWERS**

3.    The Receiver is hereby empowered and authorized, but not obligated, to act at once in respect of the Property and, without in any way limiting the generality of the foregoing, the Receiver is hereby expressly empowered and authorized to do any of the following where the Receiver considers it necessary or desirable:

(a)    to take possession of and exercise control over the Property and any and all proceeds, receipts and disbursements arising out of or from the Property;

(b)    to receive, preserve and protect the Property, or any part or parts thereof, including, but not limited to, the changing of locks and security codes, the relocating of Property to safeguard it, the engaging of independent security personnel, the taking of physical inventories and the placement of such insurance coverage as may be necessary or desirable;

(c)    to manage, operate and carry on the business of the Receivership Debtors, including the powers to enter into any agreements, incur any obligations in the ordinary course of business, cease to carry on all or any part other business, or cease to perform any contracts of the Receivership Debtors;

(d)    to engage consultants, appraisers, agents, experts, auditors, accountants, managers, counsel and such other persons from time to time and on whatever basis, including on a temporary basis, to assist with the exercise of the

Receiver's powers and duties, including without limitation those conferred by this Order;

(e)     to purchase or lease machinery, equipment, inventories, supplies, premises or other assets to continue the business of the Receivership Debtors or any part or parts thereof;

(f)     to receive and collect all monies and accounts now owed or hereafter owing to the Receivership Debtors and to exercise all remedies of the Receivership Debtors in collecting such monies, including, without limitation, to enforce any security held by the Receivership Debtors;

(g)     to settle, extend or compromise any indebtedness owing to or by the Receivership Debtors;

(h)     to execute, assign, issue and endorse documents of whatever nature in respect of any of the Property, whether in the Receiver's name or in the name and on behalf of the Receivership Debtors, for any purpose pursuant to this Order;

(i)     to undertake environmental or workers' health and safety assessments of the Property and operations of the Receivership Debtors;

(j)     to initiate, prosecute and continue the prosecution of any and all proceedings and to defend all proceedings now pending or hereafter instituted with respect to the Receivership Debtors, the Property or the Receiver, and to settle or compromise any such proceedings.  The authority hereby conveyed shall extend to such appeals or applications for judicial review in respect of any order or judgment pronounced in any such proceeding, and provided further that nothing in this Order shall authorize the Receiver to defend or settle the action in which this Order is made unless otherwise directed by this Court.

(k)     to market any or all the Property, including advertising and soliciting offers in respect of the Property or any part or parts thereof and negotiating such terms and conditions of sale as the Receiver in its discretion may deem appropriate.

(l)     to sell, convey, transfer, lease or assign the Property or any part or parts thereof out of the ordinary course of business,

     (i)     without the approval of this Court in respect of any transaction not exceeding $500,000, provided that the aggregate consideration for all such transactions does not exceed $2,000,000; and

     (ii)    with the approval of this Court in respect of any transaction in which the purchase price or the aggregate purchase price exceeds the applicable amount set out in the preceding clause,

and in each such case notice under subsection 60(8) of the *Personal Property Security Act*, R.S.A. 2000, c. P-7 shall not be required.

(m)     to apply for any vesting order or other orders necessary to convey the Property or any part or parts thereof to a purchaser or purchasers thereof, free and clear of any liens or encumbrances affecting such Property;

(n)     to report to, meet with and discuss with such affected Persons (as defined below) as the Receiver deems appropriate all matters relating to the Property and the receivership, and to share information, subject to such terms as to confidentiality as the Receiver deems advisable;

(o)     to register a copy of this Order and any other Orders in respect of the Property against title to any of the Property;

(p)     to apply for any permits, licences, approvals or permissions as may be required by any governmental authority and any renewals thereof for and on behalf of and, if thought desirable by the Receiver, in the name of the Receivership Debtors;

(q)     to enter into agreements with any trustee in bankruptcy appointed in respect of the Receivership Debtors, including, without limiting the generality of the foregoing, the ability to enter into occupation agreements for any property owned or leased by the Receivership Debtors;

(r)     to exercise any shareholder, partnership, joint venture or other rights which the Receivership Debtors may have; and

(s)     to take any steps reasonably incidental to the exercise of these powers or the performance of any statutory obligations;

and in each case where the Receiver takes any such actions or steps, it shall be exclusively authorized and empowered to do so, to the exclusion of all other Persons (as defined below), including the Receivership Debtors, and without interference from any other Person.

## DUTY TO PROVIDE ACCESS AND CO-OPERATION TO THE RECEIVER

4.      (i) The Receivership Debtors, (ii) all of their current and former directors, officers, employees, agents, accountants, legal counsel and shareholders, and all other persons acting on its instructions or behalf, and (iii) all other individuals, firms, corporations, governmental bodies or agencies, or other entities having notice of this Order (all of the foregoing, collectively, being "Persons" and each being a "Person") shall forthwith advise the Receiver of the existence of any Property in such Person's possession or control, shall grant immediate and continued access to the Property to the Receiver, and shall deliver all such Property (excluding Property subject to liens the validity of which is dependent on maintaining possession) to the Receiver upon the Receiver's request.

5.      All Persons shall forthwith advise the Receiver of the existence of any books, documents, securities, contracts, orders, corporate and accounting records, and any other papers, records and information of any kind related to the business or affairs of the Receivership Debtors, and any computer programs, computer tapes, computer disks, or other data storage media containing any such information (the foregoing, collectively, the "Records") in that Person's possession or control, and shall provide to the Receiver or permit the Receiver to make, retain and take away copies thereof and grant to the Receiver unfettered access to and use of accounting, computer, software and physical facilities relating thereto, provided however that nothing in this paragraph 5 or in paragraph 6 of this Order shall require the delivery of Records, or the granting of access to Records, which may not be disclosed or provided to the Receiver due to the privilege attaching to solicitor-client communication or documents prepared in contemplation of litigation or due to statutory provisions prohibiting such disclosure.

6.      If any Records are stored or otherwise contained on a computer or other electronic system of information storage, whether by independent service provider or otherwise, all Persons in possession or control of such Records shall forthwith give unfettered access to the Receiver for the purpose of allowing the Receiver to recover and fully copy all of the information contained therein whether by way of printing the information onto paper or making copies of computer disks or such other manner of retrieving and copying the information as the Receiver in its discretion deems expedient, and shall not alter, erase or destroy any Records without the prior written consent of the Receiver. Further, for the purposes of this paragraph, all Persons shall provide the Receiver with all such assistance in gaining immediate access to the information in the Records as the Receiver may in its discretion require including providing the Receiver with instructions on the use of any computer or other system and providing the Receiver with any and all access codes, account names and account numbers that may be required to gain access to the information.

**NO PROCEEDINGS AGAINST THE RECEIVER**

7.      No proceeding or enforcement process in any court or tribunal (each, a "Proceeding"), shall be commenced or continued against the Receiver except with the written consent of the Receiver or with leave of this Court.

**NO PROCEEDINGS AGAINST THE RECEIVERSHIP DEBTORS OR THE PROPERTY**

8.      No Proceeding against or in respect of the Receivership Debtors or the Property shall be commenced or continued except with the written consent of the Receiver or with leave of this Court and any and all Proceedings currently under way against or in respect of the Receivership Debtors or the Property are hereby stayed and suspended pending further Order of this Court, provided, however, that nothing in this Order shall: (i) prevent any Person from commencing a proceeding regarding a claim that might otherwise become barred by statute or an existing agreement if such proceeding is not commenced before the expiration of the stay provided by this paragraph 8; and (ii) affect a Regulatory Body's investigation in respect of the Receivership Debtors or an action, suit or proceeding that is taken in respect of the Receivership Debtors by or before the Regulatory Body, other than the enforcement of a payment order by the Regulatory Body or the Court. "Regulatory Body" means a person or body that has powers, duties or functions relating to the enforcement or administration of an Act of Parliament or of the legislature of a province.

## NO EXERCISE OF RIGHTS OF REMEDIES

9.     All rights and remedies (including, without limitation, set-off rights) against the Receivership Debtors, the Receiver, or affecting the Property, are hereby stayed and suspended except with the written consent of the Receiver or leave of this Court, provided however that this stay and suspension does not apply in respect of any "eligible financial contract" (as defined in the BIA), and further provided that nothing in this paragraph shall (i) empower the Receiver or the Receivership Debtors to carry on any business which the Receivership Debtors is not lawfully entitled to carry on, (ii) exempt the Receiver or the Receivership Debtors from compliance with statutory or regulatory provisions relating to health, safety or the environment, (iii) prevent the filing of any registration to preserve or perfect a security interest, or (iv) prevent the registration of a claim for lien.

## NO INTERFERENCE WITH THE RECEIVER

10.     No Person shall discontinue, fail to honour, alter, interfere with, repudiate, terminate or cease to perform any right, renewal right, contract, agreement, licence or permit in favour of or held by the Receivership Debtors, without written consent of the Receiver or leave of this Court.  Nothing in this Order shall prohibit any party to an eligible financial contract from closing out and terminating such contract in accordance with its terms.

## CONTINUATION OF SERVICES

11.     All Persons having oral or written agreements with the Receivership Debtors or statutory or regulatory mandates for the supply of goods and/or services, including without limitation, all computer software, communication and other data services, centralized banking services, payroll services, insurance, transportation services, utility or other services to the Receivership Debtors are hereby restrained until further Order of this Court from discontinuing, altering, interfering with or terminating the supply of such goods or services as may be required by the Receiver, and this Court directs that the Receiver shall be entitled to the continued use of the Receivership Debtors' current telephone numbers, facsimile numbers, internet addresses and domain names, provided in each case that the normal prices or charges for all such goods or services received after the date of this Order are paid by the Receiver in accordance with normal payment practices of the Receivership Debtors or such other practices as may be agreed upon by the supplier or service provider and the Receiver, or as may be ordered by this Court.

**RECEIVER TO HOLD FUNDS**

12.     All funds, monies, cheques, instruments, and other forms of payments received or collected by the Receiver from and after the making of this Order from any source whatsoever, including without limitation the sale of all or any of the Property and the collection of any accounts receivable in whole or in part, whether in existence on the date of this Order or hereafter coming into existence, shall be deposited into one or more new accounts to be opened by the Receiver (the "Post Receivership Accounts") and the monies standing to the credit of such Post Receivership Accounts from time to time, net of any disbursements provided for herein, shall be held by the Receiver to be paid in accordance with the terms of this Order or any further order of this Court.

**EMPLOYEES**

13.     Subject to employees' rights to terminate their employment, all employees of the Receivership Debtors shall remain the employees of the Receivership Debtors until such time as the Receiver, on the Receivership Debtors' behalf, may terminate the employment of such employees.   The Receiver shall not be liable for any employee-related liabilities, including any successor employer liabilities as provided for in section 14.06(1.2) of the BIA, other than such amounts as the Receiver may specifically agree in writing to pay, or in respect of its obligations under sections 81.4(5) or 81.6(3) of the BIA or under the *Wage Earner Protection Program Act*, S.C. 2005, c.47 ("WEPPA").

14.     Pursuant to clause 7(3)(c) of the *Personal Information Protection and Electronic Documents Act*, S.C. 2000, c. 5, the Receiver shall disclose personal information of identifiable individuals to prospective purchasers or bidders for the Property and to their advisors, but only to the extent desirable or required to negotiate and attempt to complete one or more sales of the Property (each, a "Sale").  Each prospective purchaser or bidder to whom such personal information is disclosed shall maintain and protect the privacy of such information and limit the use of such information to its evaluation of the Sale, and if it does not complete a Sale, shall return all such information to the Receiver, or in the alternative destroy all such information.  The purchaser of any Property shall be entitled to continue to use the personal information provided to it, and related to the Property purchased, in a manner which is in all material respects identical to the prior use of such information by the

Receivership Debtors, and shall return all other personal information to the Receiver, or ensure that all other personal information is destroyed.

**LIMITATION ON ENVIRONMENTAL LIABILITIES**

15. (a)  Notwithstanding anything in any federal or provincial law, the Receiver is not personally liable in that position for any environmental condition that arose or environmental damage that occurred:

  (i)  before the Receiver's appointment; or

  (ii)  after the Receiver's appointment unless it is established that the condition arose or the damage occurred as a result of the Receiver's gross negligence or wilful misconduct.

(b)  Nothing in sub-paragraph (a) exempts a Receiver from any duty to report or make disclosure imposed by a law referred to in that sub-paragraph.

(c)  Notwithstanding anything in any federal or provincial law, but subject to sub-paragraph (a) hereof, where an order is made which has the effect of requiring the Receiver to remedy any environmental condition or environmental damage affecting the Property, the Receiver is not personally liable for failure to comply with the order, and is not personally liable for any costs that are or would be incurred by any person in carrying out the terms of the order,

  (i)  if, within such time as is specified in the order, within 10 days after the order is made if no time is so specified, within 10 days after the appointment of the Receiver, if the order is in effect when the Receiver is appointed, or during the period of the stay referred to in clause (ii) below, the Receiver:

    (A)  complies with the order, or

    (B)  on notice to the person who issued the order, abandons, disposes of or otherwise releases any interest in any real property affected by the condition or damage;

(ii) during the period of a stay of the order granted, on application made within the time specified in the order referred to in clause (i) above, within 10 days after the order is made or within 10 days after the appointment of the Receiver, if the order is in effect when the Receiver is appointed, by,

(A) the court or body having jurisdiction under the law pursuant to which the order was made to enable the Receiver to contest the order; or

(B) the court having jurisdiction in bankruptcy for the purposes of assessing the economic viability of complying with the order; or

(iii) if the Receiver had, before the order was made, abandoned or renounced or been divested of any interest in any real property affected by the condition or damage.

## LIMITATION ON THE RECEIVER'S LIABILITY

16. Except for gross negligence or wilful misconduct, as a result of its appointment or carrying out the provisions of this Order the Receiver shall incur no liability or obligation that exceeds an amount for which it may obtain full indemnity from the Property. Nothing in this Order shall derogate from any limitation on liability or other protection afforded to the Receiver under any applicable law, including, without limitation, Section 14.06, 81.4(5) or 81.6(3) of the BIA.

## RECEIVER'S ACCOUNTS

17. The Receiver and counsel to the Receiver shall be paid their reasonable fees and disbursements, in each case, incurred at their standard rates and charges. The Receiver and counsel to the Receiver shall be entitled to and are hereby granted a charge (the "Receiver's Charge") on the Property, as security for such fees and disbursements, incurred both before and after the making of this Order in respect of these proceedings, and the Receiver's Charge shall form a first charge on the Property in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person but subject to section 14.06(7), 81.4(4) and 81.6(2) and 88 of the BIA.

18.     The Receiver and its legal counsel shall pass their accounts from time to time.

19.     Prior to the passing of its accounts, the Receiver shall be at liberty from time to time to apply reasonable amounts, out of the monies in its hands, against its fees and disbursements, including the legal fees and disbursements, incurred at the normal rates and charges of the Receiver or its counsel, and such amounts shall constitute advances against its remuneration and disbursements when and as approved by this Court.

**FUNDING OF THE RECEIVERSHIP**

20.     The Receiver be at liberty and it is hereby empowered to borrow by way of a revolving credit or otherwise, such monies from time to time as it may consider necessary or desirable, provided that the outstanding principal amount does not exceed $1,000,000 (or such greater amount as this Court may by further Order authorize) at any time, at such rate or rates of interest as it deems advisable for such period or periods of time as it may arrange, for the purpose of funding the exercise of the powers and duties conferred upon the Receiver by this Order, including interim expenditures. The whole of the Property shall be and is hereby charged by way of a fixed and specific charge (the "Receiver's Borrowings Charge") as security for the payment of the monies borrowed, together with interest and charges thereon, in priority to all security interests, trusts, liens, charges and encumbrances, statutory or otherwise, in favour of any Person, but subordinate in priority to the Receiver's Charge and the charges set out in sections 14.06(7), 81.4(4) and 81.6(2) and 88 of the BIA.

21.     Neither the Receiver's Borrowings Charge nor any other security granted by the Receiver in connection with its borrowings under this Order shall be enforced without leave of this Court.

22.     The Receiver is at liberty and authorized to issue certificates substantially in the form annexed as Schedule "A" hereto (the "Receiver's Certificates") for any amount borrowed by it pursuant to this Order.

23.     The monies from time to time borrowed by the Receiver pursuant to this Order or any further order of this Court and any and all Receiver's Certificates evidencing the same or any part thereof shall rank on a *pari passu* basis, unless otherwise agreed to by the holders of any prior issued Receiver's Certificates.

**ALLOCATION**

24.     Any interested party may apply to this Court on notice to any other party likely to be affected, for an order allocating the Receiver's Charge and Receiver's Borrowings Charge amongst the various assets comprising the Property.

**GENERAL**

25.     The Receiver may from time to time apply to this Court for advice and directions in the discharge of its powers and duties hereunder.  ATB is granted leave to apply to extend this Consent Receivership Order over the partners of Kodiak Services Partnership on notice to such partners, and is further granted leave to apply for an order appointing a receiver and manager over the current and future assets, undertakings and properties of each of ~~Kodiak Services USA, Inc.~~, Kodiak Services Mexico, SA. de CV and Kodiak Services Int'l Inc.

26.     Notwithstanding Rule 6.11 of the *Alberta Rules of Court*, unless otherwise ordered by this Court, the Receiver will report to the Court from time to time, which reporting is not required to be in affidavit form and shall be considered by this Court as evidence.

27.     Nothing in this Order shall prevent the Receiver from acting as a trustee in bankruptcy of the Receivership Debtors.

28.     This Court hereby requests the aid and recognition of any court, tribunal, regulatory or administrative body having jurisdiction in Canada or in the United States to give effect to this Order and to assist the Receiver and its agents in carrying out the terms of this Order. All courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Receiver, as an officer of this Court, as may be necessary or desirable to give effect to this Order or to assist the Receiver and its agents in carrying out the terms of this Order.

29.     The Receiver be at liberty and is hereby authorized and empowered to apply to any court, tribunal, regulatory or administrative body, wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order and that the Receiver is authorized and empowered to act as a representative in respect of the within proceedings for the purpose of having these proceedings recognized in a jurisdiction outside Canada.

30.    The Plaintiff shall have its costs of this motion, up to and including entry and service of this Order, provided for by the terms of the Plaintiff's security or, if not so provided by the Plaintiff's security, then on a substantial indemnity basis to be paid by the Receiver from the Receivership Debtors' estate with such priority and at such time as this Court may determine.

31.    Any interested party may apply to this Court to vary or amend this Order on not less than 7 days' notice to the Receiver and to any other party likely to be affected by the order sought or upon such other notice, if any, as this Court may order.

**FILING**

32.    The Receiver shall establish and maintain a website in respect of these proceedings at www.ey.com and shall post there as soon as practicable:

(a)    all materials prescribed by statute or regulation to be made publically available; and

(b)    all applications, reports, affidavits, orders and other materials filed in these proceedings by or on behalf of the Receiver, or served upon it, except such materials as are confidential and the subject of a sealing order or pending application for a sealing order.

_____
Justice of the Court of Queen's Bench of Alberta

**SCHEDULE "A"**

**RECEIVER CERTIFICATE**

CERTIFICATE NO. _____

AMOUNT $_____

1.  THIS IS TO CERTIFY that Ernst & Young Inc., the interim receiver and receiver and manager (the **Receiver**) of all of the assets, undertakings and properties of Kodiak Services Partnership, Kodiak Wireline Services Ltd., Kodiak Energy Solutions Ltd., Kodiak Tools Ltd., 1623360 Alberta Ltd. and Kodiak Services USA, Inc. (the "Receivership Debtors"), appointed by Order of the Court of Queen's Bench of Alberta and Court of Queen's Bench of Alberta in Bankruptcy and Insolvency (collectively, the **Court**) dated the 10th day of January, 2019 (the **Order**) made in action number _____, has received as such Receiver from the holder of this certificate (the **Lender**) the principal sum of $_____, being part of the total principal sum of $_____ which the Receiver is authorized to borrow under and pursuant to the Order.

2.  The principal sum evidenced by this certificate is payable on demand by the Lender with interest thereon calculated and compounded [daily] [monthly not in advance on the _____ day of each month] after the date hereof at a notional rate per annum equal to the rate of _____ per cent above the prime commercial lending rate of Bank of _____ from time to time.

3.  Such principal sum with interest thereon is, by the terms of the Order, together with the principal sums and interest thereon of all other certificates issued by the Receiver pursuant to the Order or to any further order of the Court, a charge upon the whole of the Property, in priority to the security interests of any other person, but subject to the priority of the charges set out in the Order and the *Bankruptcy and Insolvency Act*, and the right of the Receiver to indemnify itself out of such Property in respect of its remuneration and expenses.

4.  All sums payable in respect of principal and interest under this certificate are payable at the main office of the Lender at:

5.  Until all liability in respect of this certificate has been terminated, no certificates creating charges ranking or purporting to rank in priority to this certificate shall be issued by the Receiver to any person other than the holder of this certificate without the prior written consent of the holder of this certificate.

6.  The charge securing this certificate shall operate so as to permit the Receiver to deal with the Property) as authorized by the Order and as authorized by any further or other order of the Court.

7.   The Receiver does not undertake, and it is not under any personal liability, to pay any sum in respect of which it may issue certificates under the terms of the Order.

DATED the _____ day of _____, 20__.

Ernst & Young Inc., solely in its capacity as Receiver of the Property (as defined in the Order), and not in its personal capacity

Per: _____

Name:
Title: